IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CORDELL SANDERS,

      Plaintiff,

v.                                                                Case No. 25-cv-1009-RJD

J. TAYLOR, J. CAMARILLO, DARRELL
MELLENDORF, ROBERT E. REID,
SERGEANT STOVER, LIEUTENANT
LENEAR, OFFICER MASSEY, OFFICER
WOODWARD, OFFICER HART,
OFFICER MABREY, SERGEANT TATE,
BRANDY THOMASON, LIEUTENANT
GIPSON, SERGEANT FRITZGERALD,
OFFICER CANCINO, SERGEANT
JENKINS, NURSE WELTY, NURSE
KILL, NURSE ECHOLS, NURSE
RUHOL, NURSE LISA BROWN,

      Defendants.

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

      Plaintiff Cordell Sanders, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. In the Complaint, Sanders alleges that he was denied mental health and medical care. He also alleges that officers used excessive force and failed to protect him, all in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Cordell Sanders is classified as seriously mentally ill ("SMI") and has a history of suicide attempts (Doc. 1, p. 2). On May 17, 2024, while in segregation at Lawrence, Sanders began feeling depressed and hopeless due to his lack of prescriptions for Prozac (an anti-depressant) and Depakote (a mood stabilizing medication) (*Id*.). Both medications had expired, and Sanders had not yet received a refill (*Id*.). At approximately 2:30 p.m., he informed Lieutenant J. Taylor that he was suicidal and in need of crisis intervention (*Id*.). Taylor merely made vomiting sounds and rejected Sanders's request for care (*Id*.).

Sanders later summoned Correctional Officer Stanley and requested crisis intervention. Stanley informed Behavior Health Technician J. Camarillo who was in the unit assessing another inmate (Doc. 1, p. 3). But Camarillo failed to evaluate Sanders. As

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these two entities.

a result, he was unable to explain the expiration of his medications to her (*Id*.). At 3:30 p.m. Sanders informed Darrell Mellendorf of his need for crisis intervention, but Mellendorf refused his request (*Id*.). Sanders eventually became suicidal and set his cell on fire (*Id*.). The fire was immediately extinguished by prison guards.

In response to Sanders's mental health crisis, Robert Reid and Brandy Thomason opened the cell door and began spraying Sanders with an excessive amount of pepper spray (Doc. 1, p. 3). Sanders alleges there was no reason for the use of pepper spray. Reid, Mellendorf, and Sergeant Stover then entered Sanders's cell and punched him in the face, knocking off his eyeglasses and injuring his nose (*Id*. at p. 4). Mellendorf yanked Sanders out of his cell and body slammed him onto the concrete floor onto the right side of his face and punched him in the face (*Id*.). Reid then laid on top of Sanders and placed him in a chokehold, choking him unconscious (*Id*.). Sanders regained consciousness when Reid started kicking him in the stomach and face (*Id*.). Stover then laid on Sanders's back and attempted to choke him unconscious again. Mellendorf then choked Sanders until he fell unconscious (*Id*.). Reid sprayed Sanders again with pepper spray (*Id*.). Due to his inability to breath, Sanders flailed his legs and Lieutenant Gipson held his legs down and Officer Woodward held his left arm, rendering him defenseless (*Id*.).

Eventually Reid handcuffed Sanders and placed him into a restraint chair (Doc. 1, p. 4). He was placed in a soothing room in restraints for over four hours, unable to move (*Id*.). As a result of his injuries, Sanders urinated blood for four days (*Id*. at p. 5). Upon transferring to Pontiac Correctional Center on May 20, 2024, doctors there documented

his injuries including tenderness in his nose, neck, stomach, and groin, as well as trauma to his head (*Id*.).

Sanders alleges that during the attack, Lieutenant Lenear, Officer Massey, Officer Woodward, Officer Hart, Officer Mabrey, Sergeant Tate, Brandy Thomason, Lieutenant Gipson, Sergeant Fritzgerald, and Officer Cacino stood around watching the assault (Doc. 1, p. 6) None of the officers sought to intervene in the assault.

After the assault, Nurse Welty examined Sanders's injuries briefly (Doc. 1, p. 6). Sanders informed her about the attack, but she merely high fived Reid. She then squirted saline solution in his face and dumped some water on his head (*Id*.). Sanders alleges that Welty's actions merely caused the pepper spray to run off of his face to other parts of his body (*Id.*). Welty failed to document his injuries, nor did she contact a doctor about his head trauma (*Id*.). Sanders later informed Lieutenant Lenear that he was urinating blood and Lenear called Welty to examine him a second time (*Id*. at p. 7). But she failed to treat his issues. While on suicide watch, Sanders informed Sergeant Jenkins of his injuries, but Jenkins said Sanders would not be allowed to go to an outside hospital (*Id*.). He refused to obtain medical care for Sanders. From May 17 through May 20, 2024, Sanders informed numerous nurses of his headache from the beating and blood in his urine (*Id*. at p. 7). Sanders spoke with Nurse Welty, Nurse Kill, Nurse Echols, Nurse Ruhol, and Nurse Lisa Brown, but no one would help him (*Id*.).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following enumerated counts:

Count 1:    **Eighth Amendment deliberate indifference to mental health needs against J. Taylor, J. Camarillo, and Darrell Mellendorf for failing to provide Sanders with crisis care.**

Count 2:    **Eighth Amendment excessive force claim against Darrell Mellendorf, Robert Reid, Brandy Thomason, Sergeant Stover, Lieutenant Gipson, and Officer Woodward for the May 17, 2024 attack on Sanders.**

Count 3:    **Illinois state law assault and battery claim against Darrell Mellendorf, Robert Reid, Brandy Thomason, Sergeant Stover, Lieutenant Gipson, and Officer Woodward for the May 17, 2024 attack on Sanders.**

Count 4:    **Eighth Amendment failure to intervene claim against Lieutenant Lenear, Officer Massey, Officer Woodward, Officer Hart, Officer Mabrey, Sergeant Tate, Brandy Thomason, Lieutenant Gipson, Sergeant Fritzgerald, and Officer Cacino for refusing to intervene in the May 17, 2024 attack.**

Count 5:    **Eighth Amendment deliberate indifference to medical needs claim against Nurse Welty, Sergeant Jenkins, Nurse Kill, Nurse Echols, Nurse Ruhol, and Nurse Lisa Brown for failing to provide Sanders with medical care after the attack.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

---

[2] This includes Sanders's request to bring criminal charges of attempted murder, official misconduct, and hate crime charges. Sanders cannot use Section 1983 to criminally charge a person. A private citizen "has no right to compel a criminal prosecution." *Wimberly v. Julius*, 606 F. App'x 309, 311 (7th Cir. 2015), *cert. denied* 577 U.S. 987 (2015). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

At this stage, Sanders adequately alleges claims for deliberate indifference to his mental health and medical needs in Counts 1 and 5. He alleges that he spoke to officials about his need for crisis intervention, but they refused to obtain care for him. He also alleges that after the May 17, 2024 attack, he sought care from several officers and nurses to no avail. Thus, Sanders states viable claims in Counts 1 and 5. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

Sanders also adequately alleges an excessive force claim in Count 2. Sanders alleges that officers sprayed him with pepper spray and then proceeded to beat him, resulting in severe injuries to his head and torso. He further alleges that there was no justification for the assault and that it was malicious and sadistic. Thus, Count 2 shall proceed against the officers. *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) ("requirement for [an excessive force claim] is that [the officer] used force not 'in a good-faith effort to maintain or restore discipline,' but 'maliciously and sadistically to cause harm.'"). Sanders also states a viable state law claim for assault and battery in Count 3. Where a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a). Sanders's state law claims derive from the same factual allegations as his federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008) (a loose factual connection between the federal and state claims is generally sufficient). Thus, the Court will exercise supplemental jurisdiction over the state law claim in Count 3.

Finally, Sanders states a viable claim for officials' failure to intervene in the assault. He alleges that numerous officers were present during the attack but merely stood by

and failed to stop the assault. Thus, the claims against Defendants in Count 4 shall proceed.

## Disposition

For the reasons stated above, Count 1 shall proceed against J. Taylor, J Camarillo, and Darrell Mellendorf. Count 2 shall proceed against Darrell Mellendorf, Robert Reid, Brandy Thomason, Sergeant Stover, Lieutenant Gipson, and Officer Woodward. Count 3 shall proceed against Darrell Mellendorf, Robert Reid, Brandy Thomason, Sergeant Stover, Lieutenant Gipson, and Officer Woodward. Count 4 shall proceed against Lieutenant Lenear, Officer Massey, Officer Woodward, Officer Hart, Officer Mabrey, Sergeant Tate, Brandy Thomason, Lieutenant Gipson, Sergeant Fritzgerald, and Officer Cacino. Count 5 shall proceed against Nurse Welty, Sergeant Jenkins, Nurse Kill, Nurse Echols, Nurse Ruhol, and Nurse Lisa Brown.

The Clerk of Court shall prepare for J. Taylor, J. Camarillo, Darrell Mellendorf, Robert Reid, Brandy Thomason, Sergeant Stover, Lieutenant Gipson, Lieutenant Lenear, Officer Massey, Officer Woodward, Officer Hart, Officer Mabrey, Sergeant Tate, Sergeant Fritzgerald, Officer Cacino, Nurse Welty, Sergeant Jenkins, Nurse Kill, Nurse Echols, Nurse Ruhol, and Nurse Lisa Brown: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Sanders. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect

formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Sanders, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Sanders's claims involve his mental health and medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Sanders, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Sanders is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 21, 2025.**

*/s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**